UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRAVOR AUSTIN KILLIAN,

        Plaintiff,

                                    CASE No. 2:23-CV-11577
v.                                   HON. GEORGE CARAM STEEH

MAT KING, et al.,

        Defendants.
_____/

## **OPINION AND ORDER OF SUMMARY DISMISSAL**

This is a *pro se* civil rights complaint brought pursuant to 42 U.S.C. § 1983. Plaintiff Travor Austin Killian, out on parole following several drug-related convictions, was unable to stop using methamphetamine on his own. (ECF No. 1, PageID.5.) Despite Killian's repeated requests to be placed in jail or a rehabilitation program following numerous positive drug tests, his parole agent declined to seek parole violation charges. (*Id.* at PageID.6.) Killian has now sued several county, state, and federal law enforcement and corrections agencies and officials, as well as a district judge, county prosecutor, and the governor of Michigan.

Because Killian's allegations do not demonstrate a violation of his federal or constitutional rights, he has failed to state a claim upon which

-1-

relief may be granted. In addition, the defendants Killian names are largely immune from suit. The complaint will be summarily dismissed.

I.

In July 2022, Killian was released on parole from the MDOC for "meth related charges[.]" (*Id*. at PageID.5.) Following his release, his father's death, and getting divorced, he relapsed "almost right away." Between July 2022 and January 2023, Killian "repeatedly dropped dirty [tested positive] for methamphetamines." (*Id.*) He asserts he requested Parole Officer Simon officer charge him with a parole violation, send him to rehabilitation, or place him in jail, "because he could not stop using on his own." (*Id.*)

His parole officer told him that the department was not violating parolees who tested positive for "dangerous drugs." (*Id.*) Instead, he advised Killian to go to an outpatient rehabilitation program. (*Id.* at PageID.5-6.) Killian did so but continued to use and test positive for drugs. (*Id.* at PageID.6.) Despite these violations of his parole conditions, and despite his requests for help, Simon told Killian that his supervisor, Defendant Kelly Miller, still did not want him to be charged with a parole violation. (*Id.*)

Killian has named as defendants St. Clair County Sheriff Mat King and the Sheriff's Department; the Port Huron Police Department; Border

Patrol; the Michigan Department of Corrections and its Director, Heidi Washington; Kelly Miller; the St. Clair County Parole Office; District Judge Mona Armstrong and the 72nd District Court; St. Clair County Prosecutor Michael Wendling; and Governor Gretchen Whitmer.

Killian charges the MDOC Parole Office and the directors of other named entities with "gross neglect." (ECF No. 1, PageID.4.) He alleges that all defendants conspired to entrap him and deprive him of life. (*Id.* at PageID.6.) He accuses them of racketeering, unjust enrichment, fraud, deception, and misconduct, among other state and federal offenses. (*Id.* at PageID.6-7.)

Killian seeks declaratory and injunctive relief as well as money damages. (*Id.* at PageID.7-8.)

## II.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court must screen for colorable merit every prisoner complaint filed against a state or governmental entity and is required to dismiss those prisoner actions in which the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. *Flanory v. Bonn*, 604 F.3d 249, 252 (6th Cir. 2010) (citing 28 U.S.C. §§ 1915(e),

-3-

1915A(b); 42 U.S.C. § 1997e(c)). A complaint is frivolous if it lacks an arguable basis in law or fact and may be dismissed if it is "based on legal theories that are indisputably meritless." *Denton v. Hernandez*, 504 U.S. 25, 32 (1992) (citing *Neitzke v. Williams*, 490 U.S. 319, 325, 327-28 (1989)); *see also Brown v. Bargery*, 207 F.3d 863, 866 (6th Cir. 2000).

The dismissal standard under the PLRA is equivalent to that of Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). When evaluating a complaint under that standard, courts "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations as true, and examine whether the complaint contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Hill v. Snyder*, 878 F.3d 193, 203 (6th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

A *pro se* civil rights complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Nonetheless, Federal Rule of Civil Procedure 8(a) requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," as well as "a demand for the relief sought." Fed. R. Civ. P. 8(a)(2), (3). The

purpose of this rule is to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 at 555 (citation omitted). While this notice pleading standard does not require "detailed" factual allegations, it does require more than the bare assertion of legal principles or conclusions. *Id.*

To establish a prima facie civil rights claim under 42 U.S.C. § 1983, a plaintiff must allege that: (1) he or she was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States; and (2) the deprivation was caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Harris v. Circleville*, 583 F.3d 356, 364 (6th Cir. 2009). Plaintiffs must allege "more than just mere negligence." *Fisher v. City of Memphis*, 234 F.3d 312, 317 (6th Cir. 2000) (citations omitted), and that "the defendants were personally involved in the alleged deprivation of federal rights." *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (citing *Hall v. United States*, 704 F.2d 246, 251 (6th Cir.1983)). "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S.at 676.

### III.

**A. Nearly all defendants are immune from suit.**

First, all but one of the defendants Killian has named are immune from suit under various legal theories or are not proper parties to be sued. For instance, the Michigan Department of Corrections, the St. Clair County Parole Office, MDOC Director Washington, Parole Supervisor Kelly Miller, and Governor Whitmer are all protected by the Eleventh Amendment.

Claims against the MDOC are "'barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit,' or unless Congress has expressly abrogated Eleventh Amendment immunity." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013) (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)) (alteration in original). "Michigan has not consented to the filing of civil rights suits against it in federal court." *Id*. (citing *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986); *accord*, *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004)). Nor did Congress abrogate state sovereign immunity when it enacted 42 U.S.C. § 1983. *Chaz Const., LLC v. Codell*, 137 F. App'x 735, 743 (6th Cir. 2005).

Because the St. Clair County Parole Office is part of the MDOC,[1] it, too, is immune. *Lee v. Michigan Parole Bd.*, 104 F. App'x 490, 492 (6th Cir. 2004)

And for the same reasons suits against the state or its agencies are barred, the Eleventh Amendment bars civil rights actions against state officials sued in their official capacities. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). As a result, defendants Washington, Miller, and Whitmer are immune.

Next, St. Clair County Sheriff Mat King and Sheriff's Department and the Port Huron Police Department must be dismissed. Section 1983 imposes liability on any "person" who violates an individual's federal constitutional or statutory rights. It is well-settled under Michigan law that county jails and sheriff's departments are not legal entities amenable to suit under 42 U.S.C. § 1983. *Vine v. Cty. of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citations omitted); *see also Petty v. County of Franklin, Ohio, et al.*, 478 F.3d 341, 347 (6th Cir. 2007), *abrogation on other grounds recognized by Bailey v. City of Ann Arbor*, 860 F.3d 382, 389 (6th Cir. 2017) (county sheriff's department is not a "person" subject to liability under

---

[1] *See* Parole Probation Office Directory, https://www.michigan.gov/corrections/parole-probation/parole-probation-office-directory [https://perma.cc/EV6N-DSZ4] (last accessed Nov. 8, 2023).

§ 1983). Instead, a claim against a sheriff in official capacity or the sheriff's department is a claim against the county. *Miller v. Calhoun Cty.*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005) (citing *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1245 (6th Cir.1989)).

Similarly, local police departments are "subsumed" within their municipality or township and are not properly included as a separate defendant in a § 1983 complaint. *Boykin v. Van Buren Twp.*, 479 F.3d 444, 450 (6th Cir. 2007) (citing *Laise v. City of Utica*, 970 F.Supp. 605, 608 (E.D.Mich.1997)) (noting that a city police department is merely an agency of the city, and therefore is not a proper defendant in a § 1983 lawsuit). The Port Huron Police Department is thus not a proper defendant.

Plaintiff's sole allegation against Judge Armstrong is that she is responsible for the operation of her courtroom and ensuring her subordinates act within statutory law and constitutional requirements. (Compl., ECF No. 1, PageID.3-4.) Not only does this allegation fail to establish unconstitutional misconduct, but judges enjoy absolute immunity "from § 1983 suits arising out of their performance of judicial functions." *Huffer v. Bogen*, 503 F. App'x 455, 458 (6th Cir. 2012) (citing *Pierson v. Ray*, 386 U.S. 547, 553–54 (1967)). Killian has made no allegation to

assess conduct outside the performance of Armstrong's judicial function; she is thus immune from suit.

Similarly, Killian only charges Prosecutor Wendling with ensuring his subordinates "abide by Constitutional requirements/provisions. . ." (*Id.* at PageID.4.) But "[a]bsolute prosecutorial immunity, like absolute judicial immunity, is a common law principle that shields a prosecutor from § 1983 liability." *Cooper v. Parrish*, 203 F.3d 937, 946 (6th Cir. 2000). A prosecutor has absolute immunity for all acts "intimately associated with the judicial phase of the criminal process," including "presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Cooper*, 203 F.3d at 947 (absolute immunity applies when the prosecutor acts "as an advocate for the state"). Killian has presented no allegations which would undermine Wendling's immunity to suit.

## B. Killian's allegations of supervisory liability fail

Killian's claims against individual defendants also fail because they are based on *respondeat superior* or supervisory liability. That is, he alleges Washington is responsible for the operation of the MDOC, and the conduct of Miller; Sheriff King is legally responsible for the county sheriff's department and jail; Wendling for the actions of his subordinates; and Armstrong for the operation of her court. (ECF No. 1, PageID.2-3.)

None of these allegations establish any misconduct on those defendants' parts. It is well-settled that a civil rights plaintiff must allege the personal involvement of a defendant to state a claim under § 1983 and that liability cannot be based upon a theory of *respondeat superior* or vicarious liability. *Monell v. Department of Social Svs.*, 436 U.S. 658, 691-92 (1978); *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2016) ("a supervisor cannot be held liable simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another.") (citation omitted).

Further, "liability under § 1983 . . . cannot be based upon a mere failure to act." *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quotation omitted). Instead, a plaintiff must show that a defendant "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Peatross*, 818 F.3d at 242 (quoting *Shehee*, 199 F.3d at 300). "[A]t a minimum, the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* (citing *Shehee, supra*) (internal quotation marks omitted).

Killian's claims against defendants Washington, King, Wendling, Armstrong, and Whitmer are that they are "legally responsible" for their

respective institution's policies and for insuring their employees abide by state and federal constitutions and statutes. (ECF No. 1, PageID.1-3.) He otherwise fails to allege facts which indicate that they were personally involved in his conditions of confinement during the relevant time period, whether encouragement, participation, authorization, or acquiescence.

True, liability may be found when a "direct causal connection" exists between a plaintiff's constitutional injury and "the policies or customs" of a governmental entity. *Troutman v. Louisville Metro Dep't of Corr.*, 979 F.3d 472, 489 (6th Cir. 2020) (citing *Gray v. City of Detroit*, 399 F.3d 612, 617 (6th Cir. 2005)). But while Killian alleges these defendants are responsible for the policies of their respective organizations, he provides no factual allegations to support finding the existence of a policy that violated his constitutional rights.

**C. Killian fails to make any allegations against the Border Patrol**

Killian lists the U.S. Border Patrol among the Defendants. However, he makes no allegation against the agency. While a *pro se* litigant receives "indulgent treatment," *Hill*, 630 F.3d at 471, courts are not obligated to "conjure up unpled allegations." *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citing *Merritt v. Faulkner*, 697 F.2d 761 (7th Cir.) *cert. denied*, 464 U.S. 986 (1983)). *See also Brown v. Matuszak*, 415 F. App'x 608, 613 (6th

Cir. 2011) ("it is still necessary to include some 'well-pleaded factual allegations' to support the claim.") (quoting *Iqbal*, 129 S. Ct. at 1950). Because the plaintiff fails to allege any facts the Border Patrol, it, too, will be dismissed.

**D. Killian's allegations fail to state a claim**

Finally, Killian characterizes his civil action as a lawsuit for "gross neglect." (ECF No. 1, PageID.4.) His complaint is based on Defendants' failure to act on his continued addiction to methamphetamine. His repeated requests that the corrections system help him stop using drugs when he could not do so on his own are understandable, even sympathetic. Unfortunately for Killian, the defendants' refusal to provide that assistance did not violate any of his rights under the constitution or federal law.

Killian's claims suggest a violation of his due process rights. The Supreme Court explains that

> [t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," *see, e.g.*, *Vitek v. Jones*, 445 U.S. 480, 493–494, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution), or it may arise from an expectation or interest created by state laws or policies, *see, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 556–558, 94 S.Ct.

> 2963, 41 L.Ed.2d 935 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits).

*Wilkinson v. Austin*, 545 U.S. 209, 221–22 (2005). Killian does not offer, and the Court has not found, any federal or state case law which would establish a parolee possesses a liberty interest in either a return to custody or placement in rehabilitative services.

In fact, the opposite is true. For instance, a Tenth Circuit case analyzed a similar section 1983 lawsuit involving a parolee, in which the plaintiff alleged defendants "were deliberately indifferent to his substance abuse problem and failed to ensure that he received proper treatment while he was on parole." *Purkey v. Simmons*, 29 F. App'x 546, 547 (10th Cir. 2002). That court

> found no authority establishing that a parolee has a federal constitutional right to drug or alcohol rehabilitation treatment. *Cf*. *DeShaney v. Winnebago Co. Dep't of Soc. Servs*., 489 U.S. 189, 200, 109 S. Ct. 998, 103 L.Ed.2d 249 (1989) (noting that the government's "affirmative duty to protect arises not from [its] knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf"); *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976) (discussing the government's obligation under the Eighth Amendment "to provide medical care for those whom it is punishing by *incarceration*") (emphasis added). Further, it is clear that state corrections and parole officials have no duty to a parolee to prevent him or her from committing further crimes and being sent back to prison.

*Id.*

Other courts have determined that even inmates have no constitutional right to rehabilitation programs for substance abuse. *See Heard v. Quintana*, 184 F. Supp. 3d 515, 519 (E.D. Ky. 2016) (citing *Moody v. Daggett*, 429 U.S. 78, 88 (1976)) ("Nor does a prisoner have a liberty or property interest in participating in a prison rehabilitation program"); *accord*, *Handy v. Douglas*, No. 14-CV-01930-WYD-MEH, 2016 WL 1238152, at *4 (D. Colo. Mar. 30, 2016) (citing *Washington v. Borejon*, 324 F. App'x 741 (10th Cir. 2009)) (Defendant has no liberty interest under state law or corrections policy, and "no right to participate in rehabilitation programs."); *Cafferky v. Pallito*, No. 1:09-CV-193, 2011 WL 1211565, at *6 (D. Vt. Feb. 14, 2011), *report and recommendation adopted*, No. 1:09-CV-00193-JGM, 2011 WL 1156294 (D. Vt. Mar. 29, 2011) (same).

Further, Killian's complaint that Defendants failed to place him back in custody, whether through a parole violation or inpatient rehabilitative service, runs counter to due process convention. In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court explained that "[s]tates may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will be generally limited to freedom from restraint . . ." *Id*. at 483-84 (citations omitted). But Killian's request is to be placed under restraint from his position of relative freedom

-14-

as a parolee. As explained above, he has no constitutional right or liberty interest in such a placement.

Addiction treatment in general is sorely lacking in the United States. Barbara Fedders, *Opioid Policing*, 94 Ind. L.J. 389, 409 (2019) ("The shredding of the social safety net and disinvestment in treatment options over the last several decades underlies the current treatment gap in which only one in four people with opioid use disorder receive specialty care and only twelve percent of adults who need treatment for any substance use disorder receive it.") For offenders who are unable to stop their substance use without assistance, this lack of rehabilitation and support is especially troubling, when the costs to society in the form of additional crime and subsequent incarceration are unnecessarily increased. Austin Frakt, *Spend a Dollar on Drug Treatment, and Save More on Crime Reduction*, N.Y. Times (Apr. 24, 2017), https://www.nytimes.com/2017/04/24/upshot/spend-a-dollar-on-drug-treatment-and-save-more-on-crime-reduction.html; *see also United States v. Wade*, 744 F. App'x 265, 266 (6th Cir. 2018) (noting that defendant "has tried to get on top of his drug addiction and change his life[,] . . . [But] the disease has proven hard to beat. . . . And since Wade has not found a successful way to manage his addiction, he continues to commit check fraud in order to buy drugs.")

Unfortunately for Killian, while the lack of rehabilitation options is lamentable, it is not unconstitutional. He has failed to state a claim upon which relief may be granted, and the complaint will be dismissed.

### IV.

For the reasons stated above, the plaintiff has failed to state a claim upon which relief may be granted, and the complaint is **DISMISSED**. 28 U.S.C. § 1915(g).

**IT IS SO ORDERED.**

Dated: November 28, 2023

s/George Caram Steeh
HON. GEORGE CARAM STEEH
UNITED STATE DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 28, 2023, by electronic and/or ordinary mail and also on Travor Austin Killian #143582, Cooper Street Correctional Facility, 3100 Cooper Street, Jackson, MI 49201.

s/Michael Lang
Deputy Clerk